Philip D. Stern, Esq.
Andrew T. Thomasson, Esq.
**STERN•THOMASSON LLP**
2816 Morris Avenue, Suite 30
Union, NJ 07083-4870
Telephone: (973) 379-7500
*On behalf of Plaintiff, Bruno M. Teixeira*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUNO M. TEIXEIRA, on behalf of himself and all others similarly situated,<br><br>　　　Plaintiff,<br><br>vs.<br><br>WELTMAN, WEINBERG & REIS CO., L.P.A., a Legal Professional Association formed in the State of Ohio; and TERI LOAN HOLDINGS, LLC, a Delaware Limited Liability Company; and JOHN AND JANE DOES 1 THROUGH 50,<br><br>　　　Defendants. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff, BRUNO M. TEIXEIRA ("Plaintiff" or "TEIXEIRA"), on behalf of himself and all others similarly situated, by way of Complaint against Defendants, WELTMAN, WEINBERG & REIS CO., L.P.A. ("WELTMAN") and TERI LOAN HOLDINGS, LLC ("TERI") (collectively referred to "Defendants") says:

### I.      NATURE OF THE ACTION

**1.**      This action arises from the Defendants' collaborative activities in pursuit of their common purpose to collect consumer debts in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

### II.      PARTIES

**2.**      TEIXEIRA is a natural person.

**3.**      At all times relevant to the factual allegations of this Complaint, TEIXEIRA was a citizen of the State of New Jersey, residing in Union County, New

Jersey.

**4.**     At all times relevant to the factual allegations of this Complaint, WELTMAN was a for-profit Legal Professional Association formed in the State of Ohio.

**5.**     On information and belief, WELTMAN's principal office is located at 323 W. Lakeside Avenue, Suite 200, Cleveland, Ohio.

**6.**     On information and belief, WELTMAN is registered to transact business in the State of New Jersey.

**7.**     At all times relevant to the factual allegations of this Complaint, TERI was a for-profit Delaware limited liability company.

**8.**     On information and belief, TERI's principal office is located at 200 Berkeley Street, 11th Floor, Boston, Massachusetts.

**9.**     On information and belief, TERI is registered to transact business in the State of New Jersey.

**10.**     On information and belief, TERI is an entity created by a trustee pursuant to the Chapter 11 Bankruptcy of non-party The Education Resources Institute, Inc. to collect on the alleged outstanding debts of TEIXIRA on behalf of the Bankruptcy Plan

**11.**     JOHN AND JANE DOES NUMBERS 1 THROUGH 50, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff.  Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

**12.**     The Plaintiff is informed and believes, and on that basis alleges, that Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 50, are natural persons and/or business entities all of whom reside or are located within the United States and all of whom personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of WELTMAN and TERI that are the subject of this Complaint.  Those Defendants personally control the illegal acts, policies, and practices utilized by WELTMAN and TERI and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

### III.     JURISDICTION AND VENUE

**13.**     Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

**14.**     Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391

because the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because Defendants, individually or through the actions of persons authorized to act on their behalf, regularly transact business within this federal judicial district and, therefore, reside in the State of New Jersey within the meaning of 28 U.S.C. § 1391(b) and (c).

## IV.    CONTENTIONS REGARDING CLAIMS ARISING UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

**15.**    Plaintiff's legal contentions with regard to the claims arising under the FDCPA are set forth in the attached **Schedule A.**

## V.    FACTUAL ALLEGATIONS

**16.**    On August 22, 2014, WELTMAN commenced a civil action ("Collection Lawsuit") in the Superior Court of New Jersey by filing a complaint in a case entitled *TERI LOAN HOLDINGS, LLC v. BRUNO TEIXEIRA* which was designated in that court by Docket No. UNN-L-003041-14.

**17.**    A true copy of that complaint is attached as ***Exhibit A.***

**18.**    Among other things, the complaint filed in the Collection Lawsuit alleged that in 1992 TEIXEIRA had incurred a debt for an educational loan ("Teixeira Obligation").

**19.**    The Collection Lawsuit alleged that TEIXEIRA had defaulted on the Teixeira Obligation and that there remained a balance due and owing to TERI in the amount of $42,002.10.

**20.**    The Collection Lawsuit demanded a judgment against TEIXIRA in the amount of $42,002.10, plus costs and disbursements.

**21.**    The account agreement concerning the Teixeira Obligation, which is attached as an exhibit to the complaint in the Collection Lawsuit, reflects that the agreement was made and entered into by TEIXEIRA in the State of New Jersey.

**22.**    As reflected on the account agreement concerning the Teixeira Obligation, which is attached as an exhibit to the complaint in the Collection Lawsuit, the Teixeira Obligation would have been in default if, *inter alia*, TEIXEIRA failed to make a payment when due.

**23.**    The last payment on Teixeira Obligation was made in or before 1998.

**24.**    As reflected in ***Exhibit A***, on March 9, 2012, the Teixeira Obligation was assigned to TERI for collection.

25.     Based on the date of TEIXEIRA's last payment the Teixeira Obligation was in default at the time it was obtained by or assigned to TERI for the purpose of collecting or attempting to collect it from TEIXEIRA.

26.     Based on the date of TEIXEIRA's last payment the Teixeira Obligation was in default in 1998, which was more than six years prior to the commencement of the Collection Lawsuit.

27.     Following TEIXEIRA's attempts to have the Collection lawsuit dismissed by appearing *pro se,* WELTMAN filed an *ex parte* Request to Dismiss without prejudice on April 29, 2015.

28.     By commencing the Collection Lawsuit, Defendants:

28.01.  falsely represented the character of the Teixeira Obligation;

28.02.  threatened to have a judgment entered against TEIXEIRA which could not be legally obtained had Defendants disclosed that the applicable statute of limitations had expired;

28.03.  used deceptive means in an attempt to collect the Teixeira Obligation;

28.04.  used unfair or unconscionable means in an attempt to collect the Teixeira Obligation; and

28.05.  engaged in the act, use or employment of an unconscionable commercial practice, deception, fraud, false pretense and misrepresentation in connection with the attempt to collect a consumer debt.

## VI.     CLASS ALLEGATIONS

29.     Plaintiff brings this action both individually and as a class action on behalf of the Class he seeks to represent pursuant to Fed. R. Civ. P. 23.

30.     Subject to discovery and further investigation which may cause Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff defines the "**Class**" as follows:

> Excluding persons who, prior to the date this action is certified to proceed as a class action, either (a) died, (b) obtained a discharge in bankruptcy, (c) commenced an action in any court against Defendant alleging a violation of the Fair Debt Collection Practices Act, (d) signed a general

release of claims against Defendant, or (e) is a Judge assigned to this case or member of such Judge's staff or immediate family, the Class consists of:

Each natural person who was named as a defendant in a Lawsuit commenced by Defendants during the Class Period in an attempt to collect on a Stale Debt, where:

> "Class Period" means the one year period prior to the filing of this complaint and ending 21 days thereafter;
>
> "Lawsuit" means a civil action commenced in the Superior Court of New Jersey;
>
> "Stale Debt" means a financial obligation owed or alleged to be owed to TERI when the last payment on that account, as shown in the records obtained by Defendants, was more than six years and 31 days before the date Defendants commenced the Lawsuit.

31.     The "Class Claims" consist of all Claims arising under the FDCPA based on or arising from Defendants' commencement of a Lawsuit to collect a Stale Debt.

32.     Based on discovery and further investigation (including, but not limited to, Defendants' disclosure of class size and net worth), Plaintiff may, in addition to moving for class certification using modified definitions of the Class, Class Claims, and Class Period, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

33.     The identity of each member of the Class is readily ascertainable from Defendants' business records and those records of the entity(ies) on whose behalf Defendants sought to collect Stale Debts.

34.     This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a) because there is a well-defined community interest in the litigation in that:

> 34.01.   *Numerosity*. Plaintiff is informed and believes, and on that basis alleges, that the members of the Class are so numerous that joinder of all members would be impractical. On information and belief, there are more than 40 members of the Class.
>
> 34.02.   *Commonality*. Common questions of law and fact exist as to all members of the Class; the principal issues are whether Defendants' written communications to consumers, in the form attached as ***Exhibit A*** violate 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692(10), 1692f, and 1692f(1).

34.03. *Typicality.* Plaintiff's claims are typical of the claims of the Class members. Plaintiff and all members of the Class have claims arising out of the Defendants' common and uniform course of conduct with respect to Defendants' written communications to consumers in the form attached as ***Exhibit A***.

34.04. *Adequacy.* Plaintiff will fairly and adequately protect the interests of members of the Class ss insofar as Plaintiff has no interests that are averse to the absent Class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Plaintiff and his counsel have no interests which might cause them not to vigorously pursue the instant class action lawsuit.

35.     This action may be maintained as a "B1a-class", a "B2-class", a "B3-class", or a hybrid of any two or all three types however, at the time of commencing this action, Plaintiff expects to seek certification of a class under Fed. R. Civ. P. 23(b)(3) because the questions of law and fact common to members of the Class and Sub-Class appear to predominate over any questions affecting an individual member, and a class action would be superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

## VII.   CAUSE OF ACTION

36.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

37.     WELTMAN is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

38.     TERI is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

39.     The Teixeira Obligation is a "debt" within the meaning of 15 U.S.C. §1692a(5).

40.     TEIXEIRA is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

41.     WELTMAN attempted to collect the Teixeira Obligation from

TEIXEIRA.

**42.**   TERI attempted to collect the Teixeira Obligation from TEIXEIRA.

**43.**   In Defendants' attempt to collect the Teixeira Obligation, Defendants commenced the Collection Lawsuit.

**44.**   At the time the Defendants commenced the Collection Lawsuit, suit on the Teixeira Obligation was barred by the applicable statute of limitations.

**45.**   Defendants' commencement of the Collection Lawsuit violated the FDCPA in one or more of the following ways:

**45.01.**   Using false, deceptive, or misleading representations and/or means in connection with the collection of any debt, which constitutes a violation of 15 U.S.C. §1692e including but not limited to:

(a)   Falsely representing the character of the Teixeira Obligation in violation of 15 U.S.C. § 1692e(2)(A);

(b)   Falsely representing the legal status of the Teixeira Obligation in violation of 15 U.S.C. § 1692e(2)(A);

(c)   Threatening to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. §1692e(5); and

(d)   Using a false representation and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10).

**45.02.**   Using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f including but not limited to:

(a) Collecting or attempting to collect an amount not permitted by law in violation of 15 U.S.C. § 1692f(1).

**46.**   Based on any one of those violations, Defendants are each liable to TEIXEIRA and the Class for statutory damages, actual damages, attorney's fees and costs under 15 U.S.C. § 1692k.

## VIII.   PRAYER FOR RELIEF

**47.**   WHEREFORE, Plaintiff, Bruno M. Teixeira, on behalf of himself and all

others similarly situated, respectfully requests that the Court enter judgment against Defendants, Weltman, Weinberg & Reis Co., L.P.A. and TERI Loan Holdings, LLC:

**47.01.** An order certifying that this action may be maintained as a class pursuant to Fed. R. Civ. P. 23 including defining the class, defining the class claims, and appointing Plaintiff and their undersigned attorneys to represent the Class;

**47.02.** An award of statutory damages for TEIXEIRA pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

**47.03.** An award of actual damages for TEIXEIRA pursuant to 15 U.S.C. § 1692k(a)(1);

**47.04.** An award of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

**47.05.** Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

**47.06.** For such other and further relief as may be just and proper.

## IX. JURY DEMAND

**48.** Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury on all issues so triable.

## X. CERTIFICATION PURSUANT TO LOCAL CIVIL RULE

**49.** Pursuant to L. Civ. R. 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

STERN•THOMASSON LLP
Representing Plaintiff, Bruno M. Teixeira

*s/ Andrew T. Thomasson*

Dated: August 21, 2015                                  Andrew T. Thomasson

*s/ Philip D. Stern*

Dated: August 21, 2015                                  Philip D. Stern

# SCHEDULE "A"

**First.**    The FDCPA "covers conduct taken in connection with the collection of any debt." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3rd Cir. 2014) (internal quotation marks omitted). The Act "was passed to promote ethical business practices by debt collectors." *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002). The Act was necessary because existing consumer protection laws were inadequate as demonstrated by abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors which contributed to the number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. 15 U.S.C. §§ 1692(a) and 1692(b). Thus, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by debt collectors, ***and*** to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S. Ct. 1605, 1623, 176 L. Ed. 2d 519 (2010) (internal quotes and ellipsis omitted; emphasis added); 15 U.S.C. § 1692(e).

**Second.**        The Act is not concerned with whether the consumer owes the debt. "Congress recognized that 'the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness or marital difficulties or divorce.'" *FTC v. Check Investors, Inc.,* 502 F.3d 159, 165 (3d Cir. 2007). Nevertheless, "'[a] basic tenet of the Act is that *all* consumers, *even those who have mismanaged their financial affairs resulting in default on their debt*, deserve 'the right to be treated in a reasonable and civil manner.'" *FTC, supra,* 502 F.3d at 165 (emphasis added) quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997).

**Third.**   "Congress also intended the FDCPA to be self-enforcing by private attorney generals [sic]." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). "In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused." *Jacobson v. Healthcare Fin. Services, Inc.*, 516 F.3d 85, 91 (2d Cir. 2008); and, see, *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055 (9th Cir. 2011). "Thus, the FDCPA enlists the efforts of sophisticated consumers … as private attorneys general to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jensen v. Pressler and Pressler, LLP*, 791 F.3d 413, 419 (3rd Cir. June 30, 2015) (internal quotation marks omitted).

**Fourth.**        The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," *Brown v. Card Serv. Ctr*, 464 F.3d 450, 453n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). For example, a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 455. Furthermore, except where the Act expressly makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing, in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

**Fifth.**   The FDCPA creates no special exceptions for attorneys – even when that conduct falls within conduct traditionally performed only by attorneys. *Heintz v. Jenkins*, 514 U.S. 291 (1995). For example, there is no "litigation privilege" for debt collecting attorneys. *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007). "Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of that Act." *Piper v. Portnoff Law Associates*, 396 F.3d 227, 232 (3d Cir. 2005). Indeed, "[a]buses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." *Crossley v. Lieberman,* 868 F.2d 566, 570 (3d Cir. 1989).

**Sixth.**   Liability under the FDCPA arises upon the showing of a single violation. *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3 (2d Cir. 1993).

**Seventh.**        "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

**Eighth.**        Liability under the FDCPA is excused *only* when a debt collector establishes, as an affirmative defense, the illegal conduct was either "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c), or an "act done or omitted in good faith in conformity with any advisory opinion of the" Consumer Financial Protection Bureau, 16 U.S.C. § 1692k(e). Thus, common law privileges and immunities are not available to absolve a debt collector

from liability under the FDCPA. See, *Heintz v. Jenkins*, 514 U.S. 21, (1995); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3rd Cir. 2011); and *Sayyed v. Wolpoff & Abramson*, 485 F. 3d 236, 232-233 (4th Cir. 2007).

**Ninth.** A debt collector who violates any provision of the FDCPA is liable for "additional damages" (also called "statutory damages") up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a). The absence of actual damages is not a bar to such actions as "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n3 (1973). Indeed, Congress, through "the FDCPA[,] permits and encourages parties who have suffered no loss to bring civil actions for statutory violations." *Jacobson, supra,* 516 F.3d at 96 (emphasis added).

**Tenth.** The FDCPA also provides for class relief "capped" at the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA." *Weiss, supra,* 385 F.3d at 345. Indeed, while limiting class relief, Congress nevertheless recognized the effectiveness of class actions to enforce the FDCPA and, therefore, mandated that a class action should be maintained "without regard to a minimum individual recovery." *Id.* When a debt collector opposes class certification based on its minimal or negative net worth, "there is a chance that no claims would proceed against Defendants due to a lack of financial incentive, thereby leaving unpunished allegedly thousands of FDCPA violations. This is exactly the kind of result Congress intended to avoid through the creation of the class action form." *Barkouras v. Hecker*, 2006 WL 3544585, 2006 U.S. DIST. LEXIS 88998 (D.N.J. Dec. 8, 2006).

# EXHIBIT "A"

Weltman, Weinberg & Reis Co., L.P.A.
A Legal Professional Association formed in the State of Ohio
By: Robert T. Lieber Jr. 2144-2011
325 CHESTNUT STREET SUITE 501
PHILADELPHIA, PA 19106-2614
215-599-1500
Attorney for Plaintiff
FILE# 20599141

RECEIVED / FILED
Superior Court of New Jersey

AUG 22 2014

CIVIL CASE MANAGEMENT
UNION COUNTY

| | |
|---|---|
| TERI LOAN HOLDINGS LLC<br><br>Plaintiff,<br><br>vs<br><br>BRUNO TEIXEIRA<br><br>Defendant(s), | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br><br>UNION COUNTY<br><br>Civil Action<br><br>DOCKET NO. UNNL 3041 14<br><br>PLAINTIFF'S COMPLAINT (CONTRACT) |

Plaintiff TERI LOAN HOLDINGS, LLC having a principal place of business at 225 Franklin Street, 26th Floor, Boston, MA by way of Complaint against defendant(s) states:

1. There is due the Plaintiff from the defendant(s) BRUNO TEIXEIRA, on account #(s) 152■■■■which is now in default the sum of $42,002.10, plus costs. (See Exhibit 1 - attached hereto and incorporated herein by reference).

**WHEREFORE**, Plaintiff demands judgment for the sum of $42,002.10, plus costs, and any such other relief as this Court deems equitable and just.

### DEEMED SERVICE OF INTERROGATORIES

Pursuant to the Court Rules, the Plaintiff hereby gives notice of service upon the defendant of any and all Uniform Interrogatories for which the Court Rules impose automatic service.

### NOTICE PURSUANT TO RULES 1:5-1(a) and 4:17-4(c)

**TAKE NOTICE** that the undersigned attorneys, counsel for the plaintiff, do hereby demand, pursuant to Rules 1:5-1(a) and 4:17-4(c) that each party herein serving pleadings and Interrogatories and receiving answers thereto, serve copies of all such pleadings and answered Interrogatories received from any party, including any documents, papers and other material referred to therein, upon the

undersigned attorneys;

**TAKE FURTHER NOTICE** that this is a continuing demand.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, the undersigned is designated as trial counsel.

### DEMAND FOR INSURANCE

Pursuant to R.4:10-2, Plaintiff demands information as to any and all insurance agreements entered into by Defendants.

### CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify to the best of my knowledge that the above-captioned matter is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding. No other action or arbitration proceeding is contemplated at this time. I reserve the right to amend this Certification upon completion of further discovery.

### CERTIFICATION PURSUANT TO R. 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

WELTMAN, WEINBERG & REIS CO., L.P.A.
Attorneys for Plaintiff

By: Robert T. Lieber Jr., Esq.

Dated: **August 20, 2014**

**EXHIBIT 1**

# 1992-93 LAW ACCESS® APPLICATION

**STAFFORD LOAN** — SUPPLEMENTAL LOANS FOR STUDENTS (SLS) — LAW ACCESS LOAN (LAL)

PLEASE TYPE OR PRINT IN INK                                    YOU MAY APPLY FOR A LOAN IN YOUR NAME ALONE, REGARDLESS OF YOUR MARITAL STATUS

## BORROWER SECTION

1. Legal Name (Last) **Teixeira** (First) **Bruno** (Middle Initial) **M**

2. Social Security Number _[redacted]_   3. Telephone Number _[redacted]_   4. Date of Birth Mo/Day/Yr _[redacted]_

5. Permanent (U.S.) Address Street Number _[redacted]_ /(P.O. Box Number Not Accepted)   City **Elizabeth**   State **NJ**   Zip Code **07208**

6. Driver's License Number _[redacted]_   State of Issuance **NJ**   7. Citizenship Status: ___ U.S. Citizen/National  **X** Eligible Non-Citizen*   *(Attach Proof of Residency from INS—See Instructions)   8. Are You Currently In Default on an Education Loan? ___ Yes **X** No

9. U.S. Address of Parent/Spouse or Nearest Living Relative
Name _ota_
Address **712 Wyoming Ave.**
City/State/Zip Code **Elizabeth NJ 07208**
Telephone Number ___

U.S. Address of Adult Relative Not Residing at Address to Left
Name ___
Address **867 Westfield Ave.**
City/State/Zip Code **Rahway NJ 07065**
Telephone Number ___

10. Do you have any outstanding education debts? [ e.g., Stafford (GSL), SLS, Perkins, ICL, private and/or institutional loans, etc.]   ___ No  **X** Yes

11. List the interest rate and loan period for your most recent Stafford (GSL) loan. If you have no outstanding Stafford (GSL) loans fill in blanks with "N/A".
Most Recent Interest Rate ................... = **8** %   Most Recent Loan Period (Mo/Yr to Mo/Yr): **1/90   6/90**

12. Complete the attached work sheet, listing all your outstanding education loan debt. Include both undergraduate and graduate loans. Applicants with outstanding education loan debt must complete and submit the work sheet as part of the application. Your application request will not be considered if the work sheet is incomplete or missing.

13. Transfer from the work sheet the "Total Outstanding Debt" for each of the loan programs listed below. If the answer is "Zero" or "None", fill in the blank with a "0".
A. Total Outstanding for Stafford/GSL ............... $ **4,063** .00   C. Total Outstanding for Law Access Loan ......... $ **0** .00
B. Total Outstanding for SLS ...................... $ **0** .00   D. Total Outstanding Debt for Other Education Loans ..... $ **0** .00

14. For what academic period are you requesting the following loan(s)?: From **9/92** (Mo/Yr) To **6/93** (Mo/Yr) **7/30/92**

15. Loan Amount Requested   Stafford Loan ($7,500 Maximum/$500 Minimum) $ **7,500** .00   **7500 7/30/92**   Supplemental Loans for Students (SLS) ($4,000 Maximum/$500 Minimum) $ **4,000** .00   **4000 7/30/92**   Law Access Loan (LAL) $15,000 Maximum/$500 Minimum) $ **15,000** .00   **15000 7/30/92**

16. Select Which Supplemental Loans for Students (SLS) Deferment Option You Prefer (Check one only).
___ I wish to defer principal and interest payments while in school and have the interest capitalized.
**X** I wish to defer principal payments but pay the interest while in school.
___ I wish to begin repayment of both principal and interest while in school.

17. I have read, understand, and agree to the terms of the Borrower's Certification printed on the back of this application. I authorize the lender to investigate my creditworthiness, and to furnish information concerning my loan to consumer reporting agencies and other persons who may legally receive such information. The lender is: Ameritrust Company National Association, Cleveland, Ohio.
By my signature, I hereby authorize my school to transfer the proceeds of each my Stafford, Supplemental Loans for Students (SLS) and or Law Access Loan (LAL) disbursements to my student account at my school. I understand that my student account at my school will reflect the credit each time a transfer of the loan proceeds is made. If my lender or school does not participate in the electronic transfer of funds, a check will be sent to my school for each Law Access program disbursement.

Borrower Signature **Bruno Teixeira**   Today's Date **7/30/92**

## SCHOOL CERTIFICATION SECTION — TO BE COMPLETED BY SCHOOL ONLY

DE School Code **002632**   Branch Code **01**   School Name **SETON Hall**   Telephone Number **201-642-8744**

Loan Period (Mo/Day/Yr) From **9/1/92** to **5/8/93**   Enrollment Status: ___ Full  **X** At Least Half-time   Grade Level (6=1st yr., 7=2nd yr., 8=3rd yr., 9=4th yr., 10=5th yr., 11=6th yr., 12=7th yr.) **G2**   Expected Graduation Date (Mo/Yr) **6/95**

Cost of Attendance $ **28550** .00   Estimated Financial Aid $ **5000** .00   Cost Less Aid $ **25050** .00   Expected Family Contribution $ **3550** .00

Other Loans for this Period: Stafford $ **0** .00   SLS $ **0** .00   LAL $ **0** .00   Other $ **700** .00

Suggested Disbursement Dates: Stafford / SLS / LAL
First Disbursement (M/D/Y) **12/4/92** / **8/24/92** / **9/1/92**
Second Disbursement (M/D/Y) **1/7/93** / **1/7/93** / **12/10/93**
Third Disbursement (M/D/Y) ___
*Second LAL disbursement date cannot be prior to 1/3 of the Loan Period.

LAW ACCESS USE ONLY   RECEIVED AUG 17 1992   LAW ACCESS LOAN PROGRAM

I have read, understand and agree to the School Certification printed on the reverse side of this application and reviewed the student section of the application, the promissory notes and work sheet for completeness.

Aid Administrator Signature _[signature]_   Date **8/13/92**
Print Name **Financial Resource Management**   Title ___

Rev Date 3/92   Copyright © 1992 Law School Admission Services, Inc.

10

LENDER COPY

## Privacy Act Notice

The Privacy Act of 1974 (5 U.S.C. §552a) requires that an agency provide the following notice to each individual whom it asks to supply information.

1. The authority for collecting the information requested on the attached application is found in sections 429(a)(1) and 428(a) of the Higher Education Act of 1965, as amended (20 U.S.C. §1079(a)(1) and §1078(a)). Applicants are advised that the requested information is necessary for participation in the Stafford Loan and/or the Supplemental Loans for Students program (SLS).

2. The principal purposes of this information are as follows: to verify the identity of the applicant; to determine program eligibility and benefits; to permit servicing of the loan; and, in the event it is necessary, to locate the borrower, to collect on a delinquent or defaulted loan, and to mail program information to borrowers.

3. The routine uses of this information include its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to guarantee agencies, to educational and financial institutions, and to agency contractors, in order to verify the identity of the applicant, to determine program eligibility and benefits, to permit servicing or collecting of the loan, to counsel the borrower in repayment efforts, to investigate possible fraud, to verify compliance with program regulations, to locate a delinquent or defaulted borrower, or to analyze loan program characteristics.

4. Applicants must provide all of the information requested in order to have their application processed.

Section 7(b) of the Privacy Act of 1974 (5 U.S.C. §552a note) requires that when any federal, state, or local government agency requests an individual to disclose his or her Social Security Number (SSN), that individual must also be advised whether that disclosure is mandatory or voluntary, by what statutory or other authority the SSN is solicited, and what uses will be made of it.

Section 7(a)(2) of the Privacy Act provides that an agency may continue to require disclosure of an individual's SSN as a condition for the granting of a right, benefit, or privilege provided by law in cases in which the agency required this disclosure under statute or regulation prior to January 1, 1975, in order to verify the identity of an individual.

Disclosure of the applicant's SSN is required as a condition for participation in the Stafford Loan and/or SLS program. The U.S. Department of Education has, for several years, consistently required the disclosure of the SSN on application forms and other necessary documents adopted pursuant to published regulations. Authority for releasing this information is found in Stafford Loan regulations, particularly 34 CFR 682.201 and 682.504(a).

The SSN will be used to verify the identity of the individual, and as an account number identifier throughout the life of the loan in order to record necessary data accurately. As an identifier, the SSN is used in such program activities as: determining program eligibility; certifying school attendance and student status; determining eligibility for deferment of repayment; determining eligibility for disability or death claims; and for skip tracing and collecting in cases of delinquent or defaulted loans.

## Right to Financial Privacy Act Notice

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. §§3401-3421), the U.S. Department of Education will have access to financial records in your student loan file maintained by the lender in connection with the administration of the Stafford Loan and/or the Supplemental Loans for Students Program (SLS).

## Notice

The lender and/or guarantor and/or the Department of Education must report the status of this loan to a credit bureau. Therefore, in order to maintain a good credit rating, it is to your advantage to comply with all of the terms of the loan agreement and to meet your responsibilities as a borrower under this program.

## Criminal Penalties 18 U.S.C. §1014

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefore, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

## Criminal Penalties 20 U.S.C. §1097(a)

Any person who knowingly and willingly embezzles, misapplies, steals, or obtains by fraud, false statement, or forgery any funds, assets, or property provided or insured under this part shall be fined not more than $10,000 or imprisoned for not more than five years, or both. If the amount so embezzled, misapplied, stolen, or obtained by fraud, false statement or forgery does not exceed $200, the fine shall be not more than $1,000 and imprisonment shall not exceed one year, or both.

## Notices

Notice to New York Residents: The lender may obtain a consumer report about you from a consumer reporting agency. Upon your request, you will be informed whether or not the lender obtained a consumer report about you and if so the name and address of the consumer reporting agency that furnished the report. If this application is approved, subsequent consumer reports may be requested or used in connection with an update, renewal of extension of the credit for which you have applied.

Notice to Ohio Residents: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit-reporting agencies maintain separate credit histories on each individual upon request. The Ohio civil rights commission administers compliance with this law.

Notice to Wisconsin Residents: Wisconsin law provides that no agreement, court order or individual statement applying to marital property will affect a creditor's interest unless prior to the time credit is granted the creditor is furnished with a copy of the agreement, court order, or statement or has actual knowledge of the adverse provision.

## Borrower Certification

I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I, the borrower, certify that the information contained in my application for the Stafford, SLS, and LAL loan is true, complete and correct to the best of my knowledge and belief and is made in good faith. At my lender's option, under the Stafford, SLS, and LAL programs, I authorize the lender to make my federal loan check(s) jointly payable to me and my school and the private LAL check payable to me only or to electronically transfer loan funds to my student account at my school. I hereby authorize the school to pay to the lender any refund which may be due me up to the amount of this loan. I further authorize any educational institution that I may attend, LSAS, or the guarantor to release to the lending institution, subsequent holder, or their agents, any requested information pertinent to this loan (e.g., employment, enrollment status, prior loan history, current address). I authorize my lender, LSAS or their agents to advise my educational institution of the status of my application. I also authorize the lender, subsequent holder, their agent, educational institution, LSAS, or the guarantor to make inquiries to or respond to inquiries from my parents, spouse or prior or subsequent lenders or holders with respect to my loan application and related documents. I also authorize the lender, subsequent holder, their agent, or the guarantor to release information and make inquiries to the persons I have listed in my loan application as references, for the purpose of learning my current address and telephone number. I also authorize the lender, subsequent holder, their agent, or the guarantor to check my credit and employment history and to answer questions about their credit experience with me. I certify that the proceeds of this loan will be used for educational purposes for the academic period stated in my loan application at the educational institution named on the application. I understand that I am responsible for repaying immediately any funds that I receive which cannot reasonably be attributed to meeting educational expenses related to attendance at the institution for the loan period stated. I certify that the total amount of loans received by me under the Stafford and SLS programs, Title IV, Part B of the Higher Education Act as amended, will not exceed the allowable maximums. I further certify that I do not now owe a refund on a Pell Grant, Supplemental Educational Opportunity Grant, or State Student Incentive Grant and am not now in default on a Perkins Loan (formerly NDSL), Stafford Loans, Federally Insured Student Loan, Supplemental Loans for Students, PLUS Loan, a Consolidation Loan, or an Income Contingent Loan received for attendance at any institution. I certify that I am a borrower eligible for participation in the Stafford, SLS and LAL programs. I further certify that I have read the materials explaining the federal guaranteed student loan program which have been provided to me and that I understand my responsibilities and my rights under that program.

## School Certification

I hereby certify that the student named on this Stafford Loan, SLS, and LAL application is accepted for enrollment, or is enrolled and in good standing, as at least a half-time student, and is making satisfactory progress in a program determined to be eligible for these loan programs. I further certify that the student has been determined by this institution, under the regulations applicable to these loan programs, to be eligible for the loans applied for. I further certify that based upon records available at this institution and due inquiry to the student, the student has satisfied the requirements under the Selective Service Act necessary to receive financial aid, is not in default on any loan made under student assistance program identified in 34 CFR Part 668, and is not liable for an overpayment of any grant made under any student assistance program identified in 34 CFR Part 668. I further certify that this institution will comply with all applicable provisions of federal law and the rules, regulations, policies, and procedures of the guarantor(s) in the administration of this loan. The information provided in the borrower and school sections of the application (including information supplied in electronic format) and this School Certification is true, complete, and correct to the best of my knowledge and belief.

# LAW ACCESS® 1992-93 LOAN (LAL) PROMISSORY NOTE

### NOTE: NO SCRATCH OUTS OR WHITE OUTS OF TERMS WILL BE ACCEPTED ON THIS DOCUMENT

In this Note, the words "I", "me", "my" and "mine" mean the undersigned borrower. "You", "your" and "yours" mean Ameritrust Company National Association, or its successors and assigns, and any other holder of this Promissory Note.

## A. IMPORTANT - READ THIS INFORMATION CAREFULLY

1. When you receive my signed Promissory Note with my application, you are not agreeing to lend me money. If you decide to make a loan to me, you will mail a loan check or electronically transfer the loan funds to my school for me. You have the right not to make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me.

2. After you agree to make a loan to me, you will send me a Disclosure Statement. In addition to other information, the Disclosure Statement will tell me the amount of my disbursement and the amount of your origination fee and the guaranty fees.

3. I will review my Disclosure Statement upon receiving it and will contact you if I have any questions.

## B. PROMISE TO PAY

I, **Bruno M Teixeira**, promise to pay
(Print your Name as Borrower)

to your order on the terms of this Promissory Note all of the principal sum of

LOAN AMOUNT REQUESTED:  $ **15,000** .00

to the extent it is advanced to me or paid on my behalf, and as set out below, interest on such principal sum, interest on any unpaid accrued interest added to the principal balance, a supplemental guaranty fee equal to 2.0% of the amount advanced to me or paid on my behalf as set out below (which shall be added to the principal balance immediately prior to the Repayment Period), late charges, and, in the event of default, costs of collection and reasonable attorney's fees.

## C. DEFINITIONS

1. Disbursement Date—The "Disbursement Date" is the date on which you lend money to me in consideration for my Promissory Note and will be the date shown on my loan check or the date the loan funds are electronically transferred to my student account at my law school.

2. Interim Period—The "Interim Period" will begin on the initial Disbursement Date and will end on the earlier of the following dates:
   a. Six months after I cease to be enrolled (for any reason other than graduation) in at least half-time study at the law school named below or any other law school participating in the Law Access program; or
   b. Six months after I graduate from the law school listed below or any other law school participating in the Law Access program.

3. Repayment Period—The "Repayment Period" will begin on the day after the Interim Period ends and will continue for 180 months.

4. Statement Period—I will receive statements on my loan at the address shown on my records (see Paragraph M, Notices). The period of time covered by a statement is called a "Statement Period". During the Interim Period, I will receive quarterly statements on my loan. The quarterly statements will cover Statement Periods beginning on the Disbursement Date and thereafter on the first day of each January, April, July and October. During the Repayment Period I will receive monthly statements on my loan. The monthly statements will cover Statement Periods beginning on the first day of the Repayment Period and on the same day of each following month.

## D. INTEREST

1. Accrual—Interest on this Promissory Note will accrue at the Variable Rate. Interest begins to accrue on the Disbursement Date and will continue to accrue until the principal is paid in full. Interest will accrue on the unpaid principal sum to the extent it is advanced to me or paid on my behalf, and on unpaid accrued interest and the supplemental guaranty fee added to the principal balance in accordance with Paragraphs E.1 and G.4. Interest will be calculated on the basis of the actual number of days in the year and the actual number of days elapsed including holidays and days on which you are not open for the conduct of banking business. If I am obligated to pay interest during the Interim Period but fall to do so, you may at your option, add such interest to the principal balance of the loan at repayment.

2. Variable Rate—The Variable Rate is equal to the Current Index, plus (a) 3.25% per annum during the Interim Period, and (b) 3.40% per annum during

the Repayment Period, but in no event more than the maximum rate allowable under applicable law. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes, and at the commencement of the Repayment Period. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the first Change Date) is the most recent Index as of the Change Date. The Index is the average bond equivalent rate of the final auction for 91-day United States Treasury Bills during the previous calendar quarter. (The bond equivalent rate of the weekly auction average for 91-day United States Treasury Bills is published by the Federal Reserve Board in Statistical Release H.15 (519) under the designation "Auction Average (Investment)—3-month.") If the Index is no longer available, you will choose a comparable substitute.

## E. TERMS OF REPAYMENT

1. Interim Period—I am not required to make payments during the Interim Period. You will add unpaid accrued interest to the principal balance of the loan at repayment. I may, however, make payments of interest which accrues during the Interim Period in the amounts and on the payment due dates shown on my quarterly statements.

2. Repayment Period—I will make consecutive monthly payments in the amounts and on the payment due dates shown on my monthly statements until I have paid all of the principal and interest and any other charges I may owe under this Promissory Note.

3. Repayment Terms—I will repay my loan in consecutive monthly installments of principal and interest calculated each Change Date the amount necessary to amortize the unpaid principal balance (including capitalized interest) of my loan (as of the date of calculation) in equal monthly installments of principal and interest at the Variable Rate then in effect over the number of months remaining in the Repayment Period.

4. Amounts Owing at the End of the Repayment Period—Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late charges, I will also owe additional amounts for those late charges. In such case you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Minimum Repayment—Notwithstanding paragraph E.3, I agree to pay at least $50 each month (principal and interest) or the unpaid balance, whichever is less.

(PLEASE TURN OVER - CONTINUED ON REVERSE SIDE)

I WILL NOT SIGN THIS PROMISSORY NOTE BEFORE READING BOTH SIDES OF IT, EVEN IF OTHERWISE ADVISED. I WILL NOT SIGN THIS PROMISSORY NOTE IF IT CONTAINS ANY BLANK SPACES. BY SIGNING THIS PROMISSORY NOTE I ACKNOWLEDGE THAT I HAVE READ IT, IT CONTAINS NO BLANK SPACES AND THAT I HAVE RECEIVED AN EXACT COPY. I HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS PROMISSORY NOTE WITHOUT PENALTY.

My (Borrower's) Signature: *Bruno Teixeira*     Today's Date: 7/30/92

My Name (Print): **Bruno M Teixeira**

My SSN:

My Address:

My City/State/Zip: **Elizabeth NJ 07208**

My Law School: **Seton Hall**

AMERITRUST COMPANY NATIONAL ASSOCIATION
900 Euclid Avenue, Cleveland, Ohio 44101

By: *Michael H Shaut*
Michael H. Shaut, Senior Vice President

(Continued from other side)

6.   My obligation to repay this loan shall remain in force if I become totally and permanently disabled or die.

## F. LATE CHARGES

If permitted by law (which shall include the law of New Jersey), I will pay a late charge if I fail to make any part of an installment payment within 15 days after it becomes due. I will pay only one late charge for an installment payment, regardless of the number of days it is late. A late charge may not exceed the lesser of $5.00 or 5% of the unpaid amount of the installment.

## G. PREPAID FINANCE CHARGES

1.   Guaranty Fee—I will pay a guaranty fee to you, a portion of which you will forward to The Education Resources Institute, Inc. (hereinafter referred to as "TERI") to pay for its guarantee of this Promissory Note. The amount of this guaranty fee will be identified on my Disclosure Statement.

2.   Origination Fee—I will pay an origination fee to you equal to 0.4% of the amount of each disbursement. The origination fee will not exceed $25.00 if I reside in Louisiana or $50.00 if I reside in North Carolina or Florida.

3.   Deducted from Disbursements—At the time you issue any disbursement, you will deduct the guaranty fee and origination fee from the disbursement. If you do not withhold a fee from the proceeds of the loan and I have not already paid that fee, I agree to pay it when you bill me for it. I will not be entitled to any refund of any guaranty fee or origination fee.

4.   Supplemental Guaranty Fee—I will pay a supplemental guaranty fee equal to 2.0% of the original balance, payable on the last day of the Interim Period. A portion of this fee will be paid to TERI and the remainder will be held by a trustee. The amount of the supplemental guaranty fee will be identified on my Disclosure Statement. I agree that you can add the amount of the supplemental guaranty fee to the outstanding balance of my loan. I will not be entitled to a refund of the supplemental guaranty fee.

## H. RIGHT TO PREPAY

I have the right to prepay all or any part of my loan at any time without penalty. Prepayment will not reduce the amount of the supplemental guaranty fee charged pursuant to paragraph G.4.

## I. DEFERMENT OF REPAYMENT

I understand that I can defer payment of principal on my loan after the repayment period begins if I am attending an eligible law school at least half time. To obtain such deferment I agree to comply with the eligibility requirements and to submit to you any forms you may require to confirm my eligibility for deferment. I will remain responsible for payment of interest during any period of deferment.

## J. FORBEARANCE

If I am unable to repay my loan in accordance with the terms established under Paragraph E of this Promissory Note, I may request that you modify those terms. I understand that such modification would be at your option. I also understand that such modification of repayment terms under this paragraph is different from deferment of repayment (as described in paragraph I of this Note). I understand that I will remain responsible for payment of interest during any period of forbearance.

## K. WHOLE LOAN DUE

To the extent permitted by law (which shall include the law of New Jersey), I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Promissory Note, are due and payable at once (subject to any law which may give me a right to cure my default) if:

1.   I fail to make any monthly payment to you when due; or

2.   I fail to notify you of a change in my name, address, or school enrollment status within ten days after a change occurs; or

3.   I break any of my other promises in this Promissory Note; or

4.   Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors; or

5.   I make any false written statement in applying for this loan or at any time during the Interim or Repayment Periods.

If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default.

## L. COLLECTION COSTS

I agree to pay you reasonable amounts permitted by law (which shall include the law of New Jersey), including reasonable attorney's fees for an attorney who is not your regularly salaried employee and court and

other collection costs, which you are permitted to [illegible] of this Promissory Note if I am in default.

## M. NOTICES

1.   I will send written notice to you or any subsequent holder of this Promissory Note within ten days after any change in my name, address or school enrollment status.

2.   Any notice required to be given to me will be considered given if mailed by first class mail to the [illegible]

## N. PRIVACY

1.   I must update the information on my application whenever you ask me to do so. I authorize you from time to time to furnish information about my loan to consumer reporting agencies and to others legally allowed to receive such information. If I default on my loan, disclosure of information about my loan to consumer reporting agencies may adversely affect my credit rating.

2.   I authorize you from time to time to request and receive from others credit-related information about me (and about my spouse if I live in a community property state). If I ask you, you will tell me whether you have requested information from a consumer reporting agency and will provide me with the name and address of any agency that furnished you with a report.

3.   Unless prohibited by law (which shall include the law of New Jersey), you are authorized to share information about my loan, including, but not limited to, my name, social security number (SSN), and address, with your subsidiaries and affiliates and with Law School Admission Services, Inc. and its affiliates. You are also authorized to share information about my loan, including, but not limited to, my name, SSN, and address, with selected companies to conduct customer surveys on your behalf or with selected mailing houses for promotional solicitations, unless prohibited by law (which shall include the law of New Jersey).

## O. ADDITIONAL AGREEMENTS

1.   The proceeds of this loan will be used only for my educational expense at the law school listed above.

2.   If TERI is required under its guaranty agreement to repay my loan, TERI will become the owner of this Promissory Note and as my creditor will have all the rights of the original lender to enforce this Promissory Note against me.

3.   My responsibility for paying this Note is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Promissory Note you may accept (a) late payments, or (b) as permitted by law, partial payments, even if marked "payment in full." You may delay or fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Promissory Note to me for payment or make protest of non-payment to me before suing to collect on this Promissory Note if I am in default, and to the extent permitted by applicable law (which shall include the law of New Jersey), I hereby waive any right I might otherwise have to require such actions.

4.   You are located in Ohio. You will receive my application in Ohio and this Promissory Note will be entered into in Ohio. Your decision on whether to lend me money will be made in Ohio. I will make my payments to you in Ohio. CONSEQUENTLY, THE PROVISIONS OF THIS PROMISSORY NOTE WILL BE GOVERNED BY FEDERAL LAWS AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES. I agree that any suit I bring against you (or against any subsequent holder of this Promissory Note) must be brought in a court of competent jurisdiction in the county in which you maintain your (or the county in which such subsequent holder maintains its) principal place of business.

5.   I may not assign this Promissory Note or any of its benefits or obligations. You may assign this Promissory Note at any time. I will be notified of any assignment of this Promissory Note.

6.   The terms and conditions set forth in this Promissory Note and the Disclosure Statement constitute the entire agreement between you and me.

7.   If any provision of this Promissory Note is held invalid or unenforceable, that provision shall be considered omitted from this Promissory Note without affecting the validity or enforceability of the remainder of this Promissory Note.

8.   A provision of this Promissory Note may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Promissory Note.

RECEIVED

LAW ACCESS
LOAN PROGRAM

# Student Loan Servicing Center

### A DIVISION OF PHEAA

*1200 North Seventh Street, Harrisburg, PA 17102-1444 • 717/720-3300*

## ASSIGNMENT OF RIGHTS

Borrower's Name: *BRUNO M. TEIXEIRA*

Borrower's Social Security # _____

For the value received, the undersigned hereby assigns and transfers all right, title and interest arising from this note to the Education Resources Institute, Inc. (TERI) without recourse or warranty.

By: *Shannon Stockton*        Date: 3/2/98

(Shannon Stockton)

Title: Claims Supervisor

## ALLONGE OF ENDORSEMENT AND AGREEMENT OF ASSIGNMENT

### Recitations and Representations

1.     This Note is transferred pursuant the Modified Fourth Amended Joint Plan of Reorganization of The Education Resources Institute, Inc. ("TERI") and the Official Committee of Unsecured Creditors dated as of August 26, 2010 (the "Plan"), which was confirmed by entry of an order of confirmation of the United States Bankruptcy Court for the District of Massachusetts on October 9, 2010.  Section 6.3(d) of the Plan provides for the transfer from TERI to the TERI Plan Trust of all its right, interest, and title in TERI's assets, including, without implied limitation, any and all student loan notes owned or held by TERI as of the Plan's "Effective Date" as therein defined ("Notes").

2.     For the purpose of implementing Section 6.3(d) of the Plan, TERI and the TERI Plan Trust entered into that certain Assignment Agreement dated as of November 19, 2010 (as amended and supplemented, the "Assignment Agreement").  On the Effective Date and on the date hereof, TERI represents that it is the owner of all legal and equitable interests in and rights to and under the Notes transferred pursuant to the Assignment Agreement, including without implied limitation the Note to which this instrument is affixed.

3.     The parties acknowledge the transfer of the rights of TERI Plan Trust to receive title to the Notes under the Assignment Agreement to TERI Loan Holdings LLC, a wholly owned subsidiary of TERI Plan Trust (sometimes herein, "Holdings").

4.     This instrument shall be applicable to all Notes conveyed by the Assignment Agreement.  A copy of this instrument may be affixed to each such Note; provided, however, that the failure to affix a copy of this instrument to any such Note shall in no way limit or impair the validity of the transfer of any such Note to Holdings, or the rights of the Holdings, under any such Note.

### Endorsement

Pay to the order of TERI Loan Holdings LLC, without representations or warranties, express or implied, and without recourse, express or implied, of any type, kind, character or nature except as may be specifically set forth in the Plan or Assignment Agreement.

### Confirmatory Assignment

For the avoidance of doubt, if this instrument is appended to any documentation evidencing an obligation to pay money which does not technically constitute a "promissory note" under applicable law, the undersigned does hereby sell, assign, transfer and convey all of the rights of the undersigned therein to TERI Loan Holdings LLC, which assignment shall be on the same terms as, and as evidence of, the transfer required by the Assignment Agreement.

### General

In the event that any Note or documentation endorsed or assigned hereby is in electronic form, this instrument shall be deemed affixed thereto when placed within the electronic file

containing the copy of, or data constituting, the record of such Note or documentation, to the same extent as if physically attached to a tangible instrument or document.

By execution hereof, TERI further confirms that, pursuant to section 8 of the Assignment Agreement, TERI Plan Trust possesses the power of attorney therein described relative to all Notes assigned and conveyed under such Assignment Agreement, and the undersigned hereby consents to TERI Plan Trust assigning such power to Holdings.

IN WITNESS WHEREOF, the undersigned has executed this instrument as of the [ 9 ] day of [ March ], 2012.

THE EDUCATIONAL RESOURCES INSTITUTE, INC.

By: _____

William Davidson
Senior Vice President and Chief Financial Officer

DM3\1991178.3\U1951/00002